UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X

DARIUS JEAN,

|  | Docket No. |
|---|---|
| Petitioner, | 07-CV-11530 (VM) |

- against -

GARY GREENE, Warden, Great Meadow Correctional
Facility,

Respondent.

------------------------------------------------------------------------------X

## PETITIONER'S MEMORANDUM OF LAW

| | |
|---|---|
| JONATHAN I. EDELSTEIN | ROCKLAND CO. DIST. ATTY. |
| Attorney for Petitioner | Attorney for Respondent |
| 271 Madison Avenue, 20th Floor | One South Main Street |
| New York, NY 10016 | New City, NY 10956 |
| (212) 871-0571 x208 | (845) 638-5001 |
| | Attn: Argiro Kosmetatos, Esq. |

*Of Counsel:*

Robert Grossman

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT I

THE TRIAL COURT'S INSTRUCTIONS IMPERMISSIBLY
REDUCED THE BURDEN OF PROOF AND CONFUSED THE
JURY, AND IT WAS UNREASONABLE FOR THE STATE
COURT TO FIND THAT THE PREJUDICE WAS OBVIATED BY
THE TRIAL JUDGE'S FINAL CHARGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT II

IT WAS UNREASONABLE FOR THE STATE COURT TO
FIND THAT PETITIONER'S STATEMENTS WERE
VOLUNTARY OR THAT HIS GIRLFRIEND DID NOT ACT
AS AN AGENT OF THE POLICE IN ELICITING STATEMENTS . . . . . . . . . . . . . . . 9

POINT III

DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF
TRIAL COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.    Actual Conflict of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.    Other Instances of Ineffective Assistance . . . . . . . . . . . . . . . . . . . . . . . 17

        1.    Cross-Examination of Mendissa Jean . . . . . . . . . . . . . . . . . . . . 18

        2.    Cross-Examination of Medical Examiner . . . . . . . . . . . . . . . . . . 19

        3.    Ineffective Summation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

4.    Failure to Object to Prosecutor's Summation . . . . . . . . . . . . . . . . 20

5.    Failure to Object to Repugnant Verdict . . . . . . . . . . . . . . . . . . . . 20

6.    Cumulative Weight of Errors . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

POINT IV

PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF
APPELLATE COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

**Cases:**

Blackburn v. Alabama,
     361 U.S. 199 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Bloomer v. Scully,
     162 F.3d 187 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,22,23

Brady v. United States,
     397 U.S. 742 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bunkley v. Florida,
     538 U.S. 835 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21n

Burton v. Bock,
     320 F. Supp. 2d 582 (E.D. Mich. 2004),
     rev'd in part on other grounds, 2006 WL 1751303 (6th Cir. 2006) . . . . . . . . . . . . . . . 6,6n

Cage v. Louisiana,
     498 U.S. 39 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Chapman v. California,
     386 U.S. 18 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,7,8,8n

Cotto v. Herbert,
     331 F.3d 217 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2n

Cousin v. Bennett,
     511 F.3d 334 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cuyler v. Sullivan,
     446 U.S. 335 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Daye v. Attorney Gen.,
     696 F.2d 186 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Eze v. Senkowski,
     321 F.3d 110 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fiore v. White,
     531 U.S. 225 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21n

Francis S. v. Stone,
   221 F.3d 100 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Gilchrist v. O'Keefe,
   260 F.3d 87 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Gray v. Greer,
   800 F.2d 644 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Gutierrez v. McGinnis,
   389 F.3d 300 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8n

Harrison v. United States,
   392 U.S. 219 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Henry v. Poole,
   409 F.3d 48 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,13,17,18,18n

Jackson v. Edwards,
   404 F.3d 612 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3

Johnson v. Zerbst,
   304 U.S. 458 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Jones v. Barnes,
   463 U.S. 745 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,22,26

Lockhart v. Fretwell,
   506 U.S. 364 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mason v. Scully,
   16 F.3d 38 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Matire v. Wainwright,
   811 F.2d 1430 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Mayo v. Henderson,
   13 F.3d 528 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20n,22,23

Mickens v. Taylor,
   535 U.S. 162 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mincey v. Arizona,
    437 U.S. 385 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Miranda v. Arizona,
    384 U.S. 436 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,10,11

People v. Baldi,
    54 N.Y.2d 137 (1981)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,17,18n

People v. Kennedy,
    242 A.D.2d 876 (1st Dept. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

People v. Montanez,
    41 N.Y.2d 53 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

People v. Jean,
    13 A.D.3d 466 (2d Dept. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,7,8

People v. Payne,
    3 N.Y.3d 266 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21n

People v. Peterson,
    233 A.D.2d 533 (2d Dept. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

People v. Roe,
    74 N.Y.2d 20 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

People v. Simon,
    224 A.D.2d 458 (2d Dept. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8

People v. Valdes,
    283 A.D.2d 187 (1st Dept. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,7n

People v. Suarez,
    6 N.Y.3d 202 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,21,21n

Powell v. Galaza,
    328 F.3d 558 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Quartararo v. Fogg,
    679 F. Supp. 212 (E.D.N.Y.),
    aff'd, 849 F.2d 1467 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Strickland v. Washington,
  466 U.S. 668 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,13,14,15,
  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,18,18n,19,
  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22

Sullivan v. Louisiana,
  508 U.S. 275 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,5,6,6n,
  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,7n

Townsend v. Sain,
  372 U.S. 293 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Anderson,
  929 F.2d 96 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Curcio,
  680 F.2d 881 (2d Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Levy,
  25 F.3d 146 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15

United States v. Malpiedi,
  62 F.3d 456 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Phipps,
  319 F.3d 177 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Ruggles,
  70 F.3d 262 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Scala,
  432 F.Supp.2d 403 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Shonubi,
  103 F.3d 1085 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wheat v. United States,
  486 U.S. 153 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Williams v. Taylor,
  529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,2n,17,19

Yarborough v. Alvarado,
  541 U.S. 652 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2n

**Statutes and Regulations:**

28 U.S.C. § 2254 ....................................................... 1,2,3,9n

## PRELIMINARY STATEMENT

Petitioner DARIUS JEAN, by his attorney Jonathan I. Edelstein, respectfully submits this Memorandum of Law in support of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the ground that he is unlawfully incarcerated pursuant to a judgment of conviction entered in the Rockland County Court on or about November 21, 2002.

## STATEMENT OF FACTS

The facts of the instant case, insofar as they are relevant to this petition, are set forth in the accompanying Declaration of Jonathan I. Edelstein, and in the exhibits annexed thereto.

## STANDARD OF REVIEW

This is a habeas corpus petition brought by a prisoner in state custody pursuant to 28 U.S.C. § 2254. Under 28 U.S.C. § 2254(a), petitioner is therefore required to establish that he is "in custody in violation of the Constitution or laws or treaties of the United States." This means, with respect to claims that were decided on the merits in any state court proceeding, that relief may be granted if the state proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The term "clearly established Federal law" pursuant to Section 2254 means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000); see also Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."

-1-

Williams, 529 U.S. at 413.  A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id.  Significantly, although the Second Circuit has held that "[s]ome increment of incorrectness beyond error is required" to classify a state court decision as "unreasonable," it has cautioned that "*the increment need not be great*; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (emphasis added); see also Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005).[1]

Relief pursuant to 28 U.S.C. § 2254 also requires a showing that the petitioner has exhausted his constitutional claims in state court.  This requires that the petitioner have "fairly presented" the "substance" of his Federal claim to the highest state court with jurisdiction to hear it.  See Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2006).  To fairly present a federal claim to the state courts, a petitioner need not cite "book and verse on the federal constitution." Id.  Instead, a claim may be fairly presented by any of four other methods:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and

---

[1] Further guidance about how to distinguish an "unreasonable" application of Supreme Court precedent from one that is merely erroneous is provided by Yarborough v. Alvarado, 541 U.S. 652, 664 (2004), which suggested that the scope of the reasonableness inquiry is guided by the specificity of the rule at issue, and that specific rules of law leave less room for reasonable judgment than more broadly drawn ones.  In Cotto v. Herbert, 331 F.3d 217, 251-52 (2d Cir. 2003), the Second Circuit indicated that the reasonableness inquiry can be guided by, *inter alia*, "whether the state court has given specific reasons for its conclusion" and "whether the state court's conclusion is consistent with the purpose behind the relevant rule."  Petitioner contends that the application of these precedents, as discussed in further detail below, mandate a finding that the relevant state court decisions in this case were unreasonable within the meaning of Williams.

-2-

(d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id., citing Daye v. Attorney Gen., 696 F.2d 186, 194 (2d Cir. 1982)(en banc).

The state court's findings of fact are entitled to a presumption of correctness that can be overcome by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Mixed questions of law and fact, however, are not entitled to this presumption and are reviewed for reasonableness in a manner similar to questions of pure law. See Cousin v. Bennett, 511 F.3d 334, 338 (2d Cir. 2008).

In the instant case, as set forth in detail below, each of petitioner's claims is reviewable on the merits by this Court and should result in habeas relief. Each was presented to the highest New York court with jurisdiction to hear it, namely the Court of Appeals. Petitioner complied with Daye and its progeny by including either explicit citations to the United States Constitution or citations to Federal cases employing constitutional analysis with respect to each of his claims. Moreover, petitioner's claims allege incorrect jury instructions, improper custodial interrogation and ineffective assistance of trial and appellate counsel, which are all "well within the mainstream of [Federal] constitutional litigation." See Sullivan v. Louisiana, 508 U.S. 275 (1993) (reasonable doubt instruction); Miranda v. Arizona, 384 U.S. 436 (1966) (voluntariness); Strickland v. Washington, 466 U.S. 668, 684-86 (1986) (ineffective assistance of trial counsel); Jones v. Barnes, 463 U.S. 745, 754 (1983) (ineffective assistance of appellate counsel).

All but two of petitioner's claims resulted in an adjudication on the merits in state court, and are hence not subject to any procedural bar. Moreover, on the occasions where the state courts did invoke a procedural bar, the rule relied upon was not "firmly established or regularly followed" under the facts at bar, and in any event petitioner showed cause and prejudice due to the ineffectiveness of his appellate counsel. Finally, each of the state court decisions complained of herein constituted

an objectively unreasonable application of Supreme Court precedent within the meaning of <u>Williams</u>

and its progeny, and hence mandate habeas relief.

### POINT I

### THE TRIAL COURT'S INSTRUCTIONS IMPERMISSIBLY REDUCED THE BURDEN OF PROOF AND CONFUSED THE JURY, AND IT WAS UNREASONABLE FOR THE STATE COURT TO FIND THAT THE PREJUDICE WAS OBVIATED BY THE TRIAL JUDGE'S FINAL CHARGE

First, the state court arrived at a ruling contrary to governing Supreme Court precedent,

namely <u>Sullivan v. Louisiana</u>, 508 U.S. 275 (1993) and <u>Chapman v. California</u>, 386 U.S. 18 (1967),

by determining that the trial court's initial charge on reasonable doubt was harmless error.  In

particular, the trial court instructed the jury that reasonable doubt was "higher than 51 percent and

something less than 100 percent... ***to mathematize it, it is 51 percent that suffices***."  (T.52)

(emphasis added).  When counsel objected, the court gave a purportedly "curative" instruction that

only succeeded in compounding the error, stating that "the purpose [of his prior charge] was not to

suggest that 53 or 58 percent *but it was more than 51 percent and something less than 100 percent*,

but the standard being proved is beyond a reasonable doubt." (T.65) (emphasis added).  Moreover,

although the court's post-evidence charge never mentioned the 51-percent figure, the trial judge

never disavowed his attempt to quantify reasonable doubt and never told the jury that he was

mistaken.

It is axiomatic that the reasonable doubt instruction is one of the most important and

fundamental charges in a criminal trial, and is key to the accuracy of the jury's verdict.  <u>See</u> <u>Sullivan</u>,

508 U.S. at 277; <u>see also</u> <u>Cage v. Louisiana</u>, 498 U.S. 39, 41 (1990) (instruction requiring jurors to

find "substantial" or "grave" doubt is constitutionally deficient).  As such, it hardly requires citation

-4-

of case law to establish that a trial court may not quantify reasonable doubt, let alone in terms that suggest that the reasonable doubt standard is identical or close to the preponderance standard. See United States v. Shonubi, 103 F.3d 1085, 1092 (2d Cir. 1997). Indeed, even an attempt to quantify reasonable doubt at 95 percent, let alone 51 (or "53 or 58") percent, is a clear constitutional error. See id. at 1092 & n.3.

The pretrial reasonable doubt charge in the instant case was so egregious that the Appellate Division, as it had to do, characterized it as "improper." See People v. Jean, 13 A.D.3d 466, 468 (2d Dept. 2004). Nevertheless, the court held that "[a]ny prejudice to the defendant resulting from the County Court's improper pretrial instruction was obviated by the final charge given to the jury at the trial." Id. This was both contrary to and an unreasonable application of governing Supreme Court precedent.

To begin with, the Sullivan Court held in no uncertain terms that a deficient reasonable doubt charge is a structural error that is *never* subject to harmless-error analysis. See Sullivan, 508 U.S. at 280-82. In particular, the Court stated that a verdict founded upon an improper reasonable doubt charge is not a verdict at all within the meaning of the Sixth Amendment. See id. at 280. Thus, there is no foundation upon which harmless error review can be made:

> Once the proper role of an appellate court engaged in the Chapman inquiry is understood, the illogic of harmless-error review in the present case becomes evident. Since, for the reasons described above, there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of Chapman review is simply absent. There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt-not that the jury's actual

> finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough. The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty.

Id. at 280 (emphasis in original).

Habeas courts have thus found that state-court decisions applying harmless error analysis to deficient reasonable doubt instructions were "contrary to" Sullivan. See Powell v. Galaza, 328 F.3d 558, 567 (9th Cir. 2003). Moreover, a deficient reasonable doubt instruction is presumptively prejudicial even if it occurs in the court's initial charge, as opposed to the instructions delivered at the close of evidence. See Burton v. Bock, 320 F. Supp. 2d 582, 592-96 (E.D. Mich. 2004), rev'd in part on other grounds, 2006 WL 1751303 (6th Cir. 2006).[2]

There are sound legal reasons why this should be so. Although the pretrial charge is not the last word from the trial court's mouth, it is as crucial to a fair determination as the concluding charge, because it remains in the jurors' minds as they hear the evidence. In this case, the jurors' consideration and weighing of the evidence throughout the trial was infected by the court's egregious "51 percent" charge. By the time the trial court began to deliver its closing charge, the jurors had heard all the evidence and the summations. The prejudice that resulted to petitioner, and the degree to which the "51 percent" instruction induced the jurors to prejudge his guilt, is incalculable, which is precisely the reason why the Sullivan Court rejected harmless-error analysis. This is particularly so where, as here, the trial court *never disavowed* its erroneous pretrial instruction even though it did

---

[2] The Sixth Circuit in Burton reversed based on a finding that the trial court's reasonable doubt instruction was proper, but left undisturbed the district court's holding that pretrial as well as closing instructions were subject to Sullivan.

not repeat the error in its final charge.

It was thus contrary to Sullivan for the Second Department to apply harmless error analysis to the "51 percent" instruction. Notably, both of the cases upon which the Second Department relied in reaching this holding involved unpreserved errors. See People v. Valdes, 283 A.D.2d 187 (1st Dept. 2001); see also People v. Simon, 224 A.D.2d 458, 459 (2d Dept. 1996).[3] Unpreserved claims concerning reasonable doubt instructions, which are reviewable only for plain error (or, as used by New York courts, "in the interest of justice"), are not subject to Sullivan and can be reviewed for prejudice. See United States v. Phipps, 319 F.3d 177, 189 n.14 (5th Cir. 2003). Thus, it was contrary to Supreme Court precedent for the Appellate Division to rely on these cases in adjudicating petitioner's claims, and it was equally improper to conclude that the prejudice resulting from the "51 percent" charge could be "obviated."[4]

Indeed, even if the pretrial charge was subject to harmless error review - which it is not - the state court decision is still contrary to governing Supreme Court authority. It is well settled that, in order to find that a trial error is non-reversible, the reviewing court must find that it was harmless beyond a reasonable doubt. Chapman, 386 U.S. at 24. In the instant case, the Appellate Division did not cite Chapman or any case giving "New York's interpretation of Chapman," cf. Gutierrez v. McGinnis, 389 F.3d 300, 308 (2d Cir. 2004), nor did it engage in the analysis required by Chapman. Instead, it applied a categorical standard under which any prejudice from an improper pretrial charge

---

[3] It should also be noted that, in Valdes, the erroneous charge was "directly contradicted by other language appearing immediately before and after it," and indeed may not even have occurred. See Valdes, 283 A.D.2d at 187.

[4] This is particularly true given that petitioner's appellate counsel called the Second Department's attention to Sullivan and emphasized that incorrect reasonable doubt charges can never be harmless. See Exhibit I to Declaration at 14-15.

is deemed to be "obviated" as long as the error is not repeated in the closing charge.  See Jean, 13 A.D.3d at 468, citing Simon, 224 A.D.2d at 459 (finding that prejudice from erroneous reasonable doubt charge was obviated where "[the] error was not repeated in the supplemental instruction").

Chapman does not permit state courts to apply such blanket rules.  Instead, the Chapman doctrine requires individualized consideration of the prejudice resulting from the error to determine whether it is harmless beyond a reasonable doubt.  State courts are simply not allowed to designate entire categories of error as harmless *per se* as long as they only occur once.  The Second Department's decision in this case was directly contrary to Chapman and must be vacated.

Finally, even if the Appellate Division's decision can somehow be found to be consistent with Chapman, it is an unreasonable application of the Chapman rule.[5]  This is so because the prejudice from the improper "51 percent" charge was manifestly *not* "obviated" by the trial court's concluding instructions.  To begin with, as discussed above, the trial court never disavowed the "51 percent" instruction, so even though the improper charge was not repeated at the close of trial, the jury's consideration of the issue of reasonable doubt remained infected by that instruction.  Moreover, by the time the closing charge was delivered, the jury had already heard opening statements, summations and the entirety of the evidence, and had weighed the evidence and arguments in light of the "51 percent" standard.

Moreover, and even more importantly, the record shows that the jury was in fact confused

---

[5] "[W]hen a state court explicitly conducts harmless error review of a constitutional error, a habeas court must evaluate whether the state unreasonably applied Chapman."  Gutierrez v. McGinnis, 389 F.3d 300, 306 (2d Cir. 2004).  As set forth above, defendant contends that the state court did not conduct harmless error review as mandated by Chapman but instead used an impermissible, categorical standard under which errors in pretrial charges are harmless *per se*.  Assuming *arguendo* that the state court's analysis encompassed the Federal constitutional standard enunciated in Chapman, however, it was an unreasonable application of that standard.

and deliberated incorrectly.  As cogently noted in petitioner's appellate brief, "[d]uring two days of [post-trial] hearings, not one of the three jurors testified that the jury ever considered whether the prosecution had proved any of the elements of any of the alleged crimes beyond a reasonable doubt." <u>See</u> Exhibit I to Declaration at 18.  Moreover, the jury's inconsistent verdicts convicting petitioner of both depraved indifference murder and intentional manslaughter clearly resulted from their impression that "they only needed slightly more than a preponderance of the evidence to convict." <u>See</u> <u>id.</u>[6]

Thus, even if the "51 percent" instruction is subject to harmless error analysis - which it is not - then it was nevertheless objectively unreasonable for the state court to find that the prejudice to defendant had been "obviated."[7]  Petitioner is thus entitled to habeas relief on this claim and this Court should vacate his conviction.

## POINT II

### IT WAS UNREASONABLE FOR THE STATE COURT TO FIND THAT PETITIONER'S STATEMENTS WERE VOLUNTARY OR THAT HIS GIRLFRIEND DID NOT ACT AS AN AGENT OF THE POLICE IN ELICITING STATEMENTS

Second, it was an unreasonable application of Supreme Court precedent not to suppress

---

[6] Notably, these facts did not form the basis of the trial court's ruling that Marie Lewis suffered from "juror afterthought" rather than juror confusion, and are thus not affected by the 28 U.S.C. § 2254(e)(1) presumption of correctness attaching to that finding.  In any event, as discussed in note 13 below, that presumption has been overcome by clear and convincing evidence.

[7] This is especially true where the effect of the "51 percent" charge is combined with another egregious error committed by the trial court, namely its instruction that recklessness under New York law could be proven where the defendant was "unaware of the risk."  Because petitioner's appellate counsel did not raise this error on direct appeal, it is unexhausted and cannot form the basis of an independent claim.  However, as discussed at length in Point IV below, appellate counsel's failure to recognize the synergy of the two errors was constitutionally ineffective.

petitioner's involuntarily obtained statements.  This error occurred in three parts: (1) the state court's failure to suppress statements elicited through police interrogation when petitioner was *under four-point restraints and suffering from post-traumatic stress disorder*; (2) the court's refusal to suppress statements elicited by defendant's former girlfriend as a police agent; and (3) the failure to suppress the resulting grand jury testimony.

With respect to the first of these errors, the state court's decision was both contrary to and an unreasonable application of Supreme Court precedent.  This is because the Appellate Division, quite simply, focused on the wrong issue.  The key question is not whether the petitioner was technically "in custody" at the time he was interrogated; rather, the issue is whether the police engaged in overreaching by interrogating petitioner at a time when they knew he was mentally ill and incapable of making rational decisions.

It has long been settled that the police may not use aggressive interrogation techniques to elicit statements from suspects they know to be under a psychiatric disability.  For instance, in Blackburn v. Alabama, 361 U.S. 199, 208 (1960), the Supreme Court held that a statement was involuntarily made when, despite knowing that the defendant had a history of mental illness, the police isolated and interrogated him for a period of hours.  In Townsend v. Sain, 372 U.S. 293, 298-99 (1963), the defendant's confession was found involuntary where the police knew that he had been administered drugs that might affect his mental processes.  Most critically, in Mincey v. Arizona, 437 U.S. 385, 401 (1978), the defendant's statements were found involuntary *despite a purported Miranda waiver* where he was hospitalized, was connected to tubes and breathing apparatus, appeared confused, and complained of pain.

In the instant case, it was undisputed that petitioner had been placed in four-point restraints

-10-

due to hysteria at the time the police began to question him. According to Dr. Eric Silva, who testified as a *prosecution* witness, petitioner was suffering from post-traumatic stress disorder, a mental illness that is characterized *inter alia* by impaired judgment. <u>See</u> Exhibit F to Declaration at 352-53. Other prosecution witnesses characterized him as incoherent and uncontrollably hysterical, and testified that he had been put in restraints because he had hit his head on the pavement and was dangerously suicidal. <u>See</u> Exhibit A to Declaration at 113-16.

All this was well known to the police at the time they questioned petitioner, because they had accompanied him from his home to the hospital and it was obvious that he was restrained or incoherent. At no time did the police attempt to ascertain whether petitioner's mental faculties were intact or whether any drugs had been administered to him. Moreover, there is no evidence that petitioner was alert when asked to waive his rights, and his signature on the waiver form was the "sketchy" writing of a person not yet come to his senses rather than his usual assertive handwriting. <u>See</u> Exhibit A to Declaration at 129. This was not routine police questioning: instead, it was a classic example of police overreaching in which the law enforcement agents knowingly took advantage of defendant's impaired state to "wring a confession from him against his will." <u>See</u> <u>Blackburn</u>, 361 U.S. at 208. It was thus an unreasonable application of the above cited precedents and of <u>Miranda v. Arizona</u>, 384 U.S. 436, 475 (1966), for the state court to focus exclusively on petitioner's custodial status and ignore the way the police took advantage of his obvious mental illness.

The state courts further compounded this error by failing to suppress the additional confession that defendant made to Ms. Nicolas when she promised him he would not be charged with murder. At this time, petitioner had been in custody for eight and a half hours, and was

weeping profusely and susceptible to suggestion.  <u>See</u> Exhibit A to Declaration at 277-80.  Clearly, when Ms. Nicolas told him that his story "made no sense" and that he would not be charged with murder if he said what they wanted him to say, he was immediately susceptible to such a promise.  <u>See</u> <u>United States v. Ruggles</u>, 70 F.3d 262, 265 (2d Cir. 1995), <u>citing</u> <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970) (improper promises may overbear defendant's will); <u>see also</u> <u>United States v. Anderson</u>, 929 F.2d 96, 100-01 (2d Cir. 1991) (misleading promises by or at the behest of the police may render statement involuntary).

In the instant case, there was no dispute that Ms. Nicolas elicited statements from the petitioner or that she made the promise in question.  The sole dispute was whether she acted as an agent of the police, and the state court's determination in this respect - i.e., that there was "no evidence" of agency - was unreasonable.[8]  Not only did Ms. Nicolas explicitly testify that the detectives "told" her to speak to petitioner and "get the real story of what occurred," <u>see</u> Exhibit A to Declaration at 275, but the surrounding circumstances clearly support a finding that she acted as a police agent.  Specifically, the detectives acknowledged telling her that petitioner's story "made no sense," and that immediately afterward, they ushered her into the room where he was confined and allowed them to speak together in Creole.  Moreover, Ms. Nicolas, who potentially faced charges as an accomplice, had every reason to cooperate with the police and obtain favorable treatment.  Consequently, it was unreasonable for the state courts to find that Ms. Nicolas was not acting as a police agent in eliciting a confession from petitioner, and this Court should find that he is entitled to habeas relief.

---

[8] Petitioner contends that the issue of agency is a mixed question of law and fact that is not entitled to a presumption of correctness.  Even if such a presumption applies, however, petitioner submits for the reasons set forth above that it has been overcome by clear and convincing evidence.

Finally, given that neither petitioner's statements to the police nor his statements to Ms. Nicolas were voluntary, it is clear that his subsequent grand jury testimony was "impelled by the prosecution's wrongful use of his illegally obtained confessions." Harrison v. United States, 392 U.S. 219, 224-25 (1968). Circumstantially, petitioner would never have taken the stand before the grand jury except in an attempt to undo the damage that resulted from his improperly elicited statements. This Court should accordingly find that it was an unreasonable application of Supreme Court precedent not to suppress his statements in their entirety, and remand for a new trial.

### POINT III

### PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The United States Constitution guarantees every criminal defendant the right to counsel. See U.S. Const. Amend 6. This right is violated when defense counsel "fails to meet a minimum standard of effectiveness, and defendant suffers prejudice from that failure." Strickland v. Washington, 466 U.S. 668 (1984). The Federal standard, enunciated by the United States Supreme Court in Strickland, adopted a two-pronged test for ineffective assistance. The Strickland Court held that a defendant must show (1) "that counsel's representation fell below an objective standard of reasonableness" and, (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694.

A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Henry v. Poole, 409 F.3d 48, 64 (2d Cir. 2005). Significantly, "a defendant *need not show* that counsel's deficient conduct *more likely than not* altered the outcome of the case" or that the evidence would have been legally insufficient for conviction absent counsel's errors. Id. (emphasis in original). In sum, a defendant need not show that he would have been acquitted or that he would

have been entitled to judgment as a matter of law had his counsel not erred, but only that his counsel's performance undermines confidence in the verdict when considered as part of the whole case. See id. at 64. Moreover, this determination may be made with the benefit of hindsight. Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

A trial attorney's failure to object can rise to the level of ineffective assistance of counsel if the grounds for the objection are meritorious and the failure to object results in the prejudice set forth in Henry. In the post-AEDPA decision of Bloomer v. Scully, 162 F.3d 187, 193-94 (2d Cir. 1998), the Second Circuit held that ineffective assistance was established when the petitioner's trial counsel failed to raise an "obvious" objection to the prosecution's post-trial disclosure of Rosario material. In Mason v. Scully, 16 F.3d 38 (2d Cir. 1994), the Second Circuit granted habeas relief where the petitioner's trial attorney failed to raise a meritorious Confrontation Clause objection.

Moreover, it should be noted that, where counsel labored under an actual conflict of interest, the defendant need not prove that he was prejudiced. See Strickland, 466 U.S. at 692. In such a case, because it is "difficult to measure the precise effect on the defense of representation corrupted by conflicting interests," prejudice is *presumed* as long as the defendant can show that the conflict "adversely affected his lawyer's performance." Id., citing Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). This merely requires that the attorney have foregone a "plausible" alternative defense strategy due to the conflict. See United States v. Levy, 25 F.3d 146, 157 (2d Cir. 1994).

Here, as set forth below, petitioner's trial counsel failed to make *several* meritorious objections, *any* of which would have posed a reasonable probability of changing the outcome of the trial. In addition, counsel labored under an actual conflict of interest that adversely affected his representation of petitioner. Hence, this Court should find that the Appellate Division acted contrary

-14-

to and/or unreasonably applied <u>Strickland</u> in rejecting petitioner's ineffectiveness claims.

## A.    Actual Conflict of Interest

First, as the People properly brought to the attention of the trial court, defense counsel labored under a serious actual conflict of interest due to his simultaneous representation of prosecution witness Dr. Eric Silva on a New Jersey drug charge. Based on the evidence developed at the conflict hearing, including the fact that counsel's representation of Dr. Silva had not terminated and that Dr. Silva refused to waive his privilege with respect to the marijuana charge, the trial court correctly found that an actual conflict existed. Nevertheless, both the trial court and the Second Department denied relief to petitioner on this ground.

Petitioner first submits that the Second Department's decision was contrary to <u>Strickland</u> and its progeny. In particular, the Appellate Division did not apply the special standard applicable to actual conflicts of interest, but instead lumped this claim in with petitioner's other claims of ineffective assistance and applied a "meaningful representation" standard under <u>People v. Baldi</u>, 54 N.Y.2d 137 (1981). Clearly, as discussed above, the presumption of prejudice inherent in actual conflicts cannot be overcome simply because defense counsel's representation may have been "meaningful" in other respects. <u>See</u> <u>Strickland</u>, 466 U.S. at 692; <u>Levy</u>, 25 F.3d at 157. Thus, the Second Department's total disregard of Supreme Court authority mandates relief.

Moreover, even if the state *trial* court's citation of <u>Strickland</u> and <u>Cuyler</u> is entitled to deference,[9] it nevertheless unreasonably applied those and other controlling precedents in finding that the actual conflict was waivable. To begin with, it is axiomatic that any waiver of a

---

[9] Defendant submits that, because the Second Department's ruling on direct appeal superseded any prior rulings by the trial court, it is the sole decision entitled to AEDPA deference with respect to the actual conflict claim.

constitutional right, including the right to conflict-free counsel, must be knowing and intelligent. See Johnson v. Zerbst, 304 U.S. 458, 464-465 (1938); see also Mickens v. Taylor, 535 U.S. 162, 171 (2002). Here, the trial court did not adequately ensure that petitioner's waiver was knowing and intelligent because, although it informed Mr. Jean that he *could* consult with independent counsel, it did not in fact *appoint* independent counsel to advise petitioner. See United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir.1982); see also United States v. Scala, 432 F.Supp.2d 403, 408 (S.D.N.Y. 2006) (noting that the defendant had "consulted with independent counsel appointed for the purpose"). Given that petitioner was effectively unable to seek and consult with independent counsel from the Rockland County Jail, especially within the very short time provided by the trial court, it is unreasonable to find that his waiver was knowing, intelligent and voluntary.

Second, and just as critically, the trial court improperly relied on defense counsel's representations in determining whether cross-examining Dr. Silva on the drug charge was a "plausible" alternative defense strategy. Clearly, "an attorney who is prevented from pursuing a strategy or tactic because of the canons of ethics *is hardly an objective judge of whether that strategy is sound trial practice*." United States v. Malpiedi, 62 F.3d 456, 469 (2d Cir. 1995) (emphasis added). Indeed, "[c]ounsel's inability to make such a conflict-free decision *is itself a lapse in representation*." Id. (emphasis added). Thus, when the trial court deferred to defense counsel's representation that "as a matter of trial strategy, the defense does not plan to vigorously attack the doctor's credibility," see Exhibit E to Declaration at n.1, it improperly allowed the conflicted counsel himself to make a judgment call as to the strategy he was forbidden to pursue.[10]

---

[10] This deference is particularly shocking in light of the trial court's recognition that defense counsel's conduct "may violate several ethical canons." See Exhibit E to Declaration at n.3.

-16-

Finally, the trial court's determination as to whether the alternative defense strategy was "plausible" was also infected by its erroneous conclusion that Dr. Silva was not an "important" or "critical" prosecution witness. In fact, as the trial judge himself noted, Dr. Silva provided testimony on a key contested point: i.e., that "the victim [Kyona] had been deceased for several hours before she was presented at the hospital." A key part of the defense in this case was petitioner's contention that Kyona was *still alive* at the time he and Ms. Nicolas called 911. Thus, far from being unimportant, Dr. Silva's testimony undercut petitioner's claim that he attempted to save Kyona and thus did not exhibit depraved indifference toward her life. Any impeachment of Dr. Silva's credibility was thus an essential, let alone "plausible," defense strategy, and given the court's independent duty to ensure conflict-free counsel, see Wheat v. United States, 486 U.S. 153, 161 (1988), it was an unreasonable application of Supreme Court precedent to find that the conflict had been validly waived.

**B.     Other Instances of Ineffective Assistance.**

Petitioner further submits that the Second Department's rejection of his other ineffective assistance claims was also "contrary to" controlling Supreme Court precedent within the meaning of Williams. Specifically, petitioner contends that the Baldi "meaningful representation" standard is contrary to Strickland because it can result in denial of relief to a defendant whose attorney committed prejudicial errors if he was "competent in all other respects." See Henry v. Poole, 409 F.3d 48, 70-72 (2d Cir. 2005). Here, the prosecution explicitly argued on direct appeal that, notwithstanding counsel's errors, petitioner's conviction should be affirmed because defense counsel performed a laundry list of tasks at various other stages of the trial. See Exhibit J to Declaration at 45-47. This explicit and lengthy argument, which the Appellate Division must be presumed to have

adopted, "failed to apply the <u>Strickland</u> standard at all." <u>Henry</u>, 409 F.3d at 72.[11]

In any event, even assuming *arguendo* that the Appellate Division's decision was not contrary to <u>Strickland</u>, it was nevertheless an unreasonable application of <u>Strickland</u> and its progeny. In the interest of not belaboring the record, petitioner primarily refers this Court to Points III through IX of his brief on direct appeal for the reasons why this was so, but will discuss each ground briefly below.

     1.    *Cross-Examination of Mendissa Jean.*

First, defense counsel failed to adequately cross-examine Mendissa Jean, who was one of the victims and who also testified as an eyewitness to the beating of Kyona and its aftermath. Of the grounds enumerated in petitioner's appellate brief, one deserves particular attention: counsel's failure to elicit from Mendissa that Kyona was still breathing at the time 911 was called. <u>See</u> Exhibit I to Declaration at 22-23. In particular, Mendissa testified before the Grand Jury that she "heard [Kyona] in her room" and thus knew that Kyona was still alive at this time. <u>Id.</u> Defense counsel, however, did not elicit this testimony from her at the time of trial or impeach her with the Grand Jury transcript.

Had defense counsel elicited this critical evidence - which could easily have been done with sensitivity to Mendissa - he could have shown that petitioner actively tried to save Kyona. This would have undercut the prosecution's contention, bolstered by the testimony of Dr. Silva, that

---

[11] Petitioner acknowledges that, thus far, the Second Circuit has not yet held that <u>Baldi</u> is *per se* contrary to <u>Strickland</u>. <u>See</u> <u>Henry</u>, 409 F.3d at 70-71. Nevertheless, to the extent that any determination under <u>Baldi</u> may be predicated upon defense counsel's competence in other phases of the case, petitioner submits that such a determination *is* contrary to <u>Strickland</u> even under current Second Circuit law. <u>See id.</u> at 72. In any event, petitioner hereby preserves the argument that <u>Baldi</u> is contrary to <u>Strickland</u> for purposes of *en banc* and/or Supreme Court review if necessary.

petitioner callously let Kyona remain in the house for hours after she died before calling for help. As such, this testimony from Mendissa would have refuted the prosecution's key theory of depraved indifference and conveyed to the jury that petitioner did not act with utter disregard for human life. It was an unreasonable application of <u>Strickland</u> not to conclude that this failure was ineffective assistance.

> 2.     *Cross-Examination of Medical Examiner.*

Second, defense counsel failed to effectively cross-examine the medical examiner, Dr. Zugibe.  <u>See</u> Exhibit I to Declaration at 40-41.  This failure also pertained to the key issue of what time Kyona died, with Dr. Zugibe initially testifying that it could have been as late as 3 a.m. (i.e., when 911 was called) but then adjusting it back to 2 a.m.  Defense counsel did not cross-examine him on this discrepancy, or impeach him with his testimony that rigor mortis could occur in as little as one hour.  This again prejudiced petitioner as to a key issue in the case which, if the prosecution's contentions had been competently refuted, might well have led to conviction of a lesser charge.

> 3.     *Ineffective Summation.*

Third, as set forth in the brief on direct appeal, counsel delivered an ineffective summation. <u>See</u> Exhibit I to Declaration at 41-46.  Among other things, as described at length in the brief, defense counsel did not address the discrepancies in the testimony of the prosecution witnesses regarding the time of Kyona's death, nor did he cite Mendissa's grand jury testimony that Kyona was still breathing when 911 was called.  Further, he "emphasize[d] the brutal nature of the crime" and as such, exaggerated rather than mitigated the impact of the prosecution's case.  <u>See</u> <u>Quartararo v. Fogg</u>, 679 F. Supp. 212, 248 (E.D.N.Y.), <u>aff'd</u>, 849 F.2d 1467 (2d Cir. 1988); <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 369 (2000).  It was thus unreasonable for the state court to find that his

summation was effective.

### 4.    Failure to Object to Prosecutor's Summation

Fourth, defense counsel failed to object to the prosecutor's closing argument that petitioner had, in full view of Mendissa, carried Kyona's lifeless body to the bathroom and attempted to wash her.  See Exhibit I to Declaration at 46-47.  In fact, Mendissa had not given any such testimony.  Thus, defense counsel permitted the prosecution, without objection, to argue graphically that petitioner sought to establish an alibi using his own daughter's dead body.  Allowing this assertion to pass unchallenged was simply not the action of a competent attorney and, singly or in combination with the other errors alleged above, was highly prejudicial.

### 5.    Failure to Object to Repugnant Verdict

Defense counsel was also ineffective in failing to object to the repugnant verdict delivered by the jury, which convicted petitioner of both depraved indifference murder and intentional manslaughter with respect to the same victim.  See Exhibit I to Declaration at 26-29.  This was especially critical because it would have preserved for appeal an issue that would have been dispositive by the time the petitioner's conviction became final.[12]

In particular, in People v. Suarez, 6 N.Y.3d 202, 212 (2005), the Court of Appeals stated that "a defendant who intends to *injure* or kill a particular person cannot generally be said to be 'indifferent' -- depravedly or otherwise -- to the fate of that person" (emphasis added).  As such,

---

[12] Notably, where a claim of ineffective assistance of counsel is based on the failure to preserve a point for appeal, prejudice is measured by whether there is a reasonable probability that the claim would have succeeded *in the state's highest court*, even if an intermediate appellate court may have denied the claim.  Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994).  Thus, the Second Department's determination on direct appeal that the verdicts were not inconsistent is not dispositive as to the instant argument.

whatever the state of the law may have been at the time defendant was convicted, the state of the law at the time his conviction became *final* was that the intentional manslaughter and depraved indifference murder charges were inconsistent.[13]  Thus, had petitioner's trial counsel preserved this issue, there is *at minimum* a reasonable probability that his murder conviction would ultimately have been vacated.

>    6.    *Cumulative Weight of Errors*

Finally, even assuming *arguendo* that each of the above errors are not enough by themselves to warrant habeas relief - which they are - then their cumulative weight clearly mandates vacatur. As discussed in Eze v. Senkowski, 321 F.3d 110, 135-36 (2d Cir. 2003), it is incumbent upon a habeas court to "assess the aggregate effect of these alleged errors to determine whether their cumulative weight rises to the level of constitutionally deficient conduct."

Here, the cumulative effect of trial counsel's errors was devastating because each of them concerned the *actus reus* of depraved indifference murder.  As shown above, the errors affected the jury's consideration of the time of Kyona's death - and, thus, of petitioner's contention that she was still alive when he called 911 and he did his best to preserve her life - as well as whether he attempted to wash her lifeless body in order to conceal his conduct.  Given that the errors bolstered each other in this manner, it was an unreasonable application of Strickland and its progeny for the state courts to find that they were not of constitutional magnitude.

---

[13] To be sure, Suarez itself had not yet been decided at the time petitioner's conviction became final.  However, because the Suarez decision was a mere clarification of People v. Payne, 3 N.Y.3d 266 (2004), which *was* decided before petitioner's conviction became final, he is entitled to its benefit on collateral review.  See Fiore v. White, 531 U.S. 225, 229-31 (2001); see also Bunkley v. Florida, 538 U.S. 835, 840-42 (2003).

**POINT IV**

**PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF
APPELLATE COUNSEL**

Finally, the state courts unreasonably applied Supreme Court precedent in determining that petitioner's appellate counsel was not ineffective. A defendant in a criminal case has a Sixth Amendment right to effective assistance of counsel on his direct appeal. See Jones v. Barnes, 463 U.S. 745, 754 (1983). The Second Circuit applies the Strickland standard to claims of ineffective assistance of appellate counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). While an appellate attorney is not required to raise every non-frivolous issue, "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id. This requires a comparative analysis, as the Second Circuit has stated:

> ...the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised.

Id., quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1985). Thus, ineffective assistance of appellate counsel may be established when the appellate attorney ignores a "substantial [and] meritorious" issue and raises a "weak issue" instead. Id., citing Matire v. Wainwright, 811 F.2d 1430, 1438 (11th Cir. 1987).

In Mayo, for instance, the petitioner's appellate attorney was found to be ineffective when he omitted a Rosario issue that would have resulted in reversal and instead argued credibility issues and raised a meritless sufficiency point. See id. at 536. Likewise, in Bloomer v. Scully, 162 F.3d 187 (2d Cir. 1998), the Second Circuit held that a Federal habeas petitioner's appellate counsel was

ineffective for exactly the reason asserted in the instant case - that he failed to recognize and raise trial counsel's ineffectiveness in not making a meritorious objection. See id. at 192. Rather, the appellate attorney raised "a number of challenges on direct appeal that lacked merit, including challenges to the sufficiency of the evidence, various evidentiary rulings, and the district court's denial of Bloomer's motion for a new trial based on newly-discovered evidence." Id.

In the instant case, petitioner's appellate counsel ignored precisely the sort of "substantial and meritorious" issue contemplated by Mayo. In particular, Mr. Hollenberg failed to argue that that the trial court committed reversible error in instructing the jury that it could find defendant guilty of depraved indifference murder if he was "unaware of the risk" created by his conduct.

This error was clearly preserved by trial counsel and was not cured by the trial court. Indeed, even though the trial judge acknowledged that such an instruction "would have been a biggy," he insisted that he had given no such charge and refused to correct the record. The transcript of the trial belies the trial judge's contention, so the error - which was indeed a "biggy" - was left uncorrected to influence the trial jury's deliberations.

This erroneous instruction, standing alone, would have been sufficient to constitute reversible error under New York law. It is well settled that recklessness is a "higher [and] more culpable" mental state than negligence, and that awareness of the risk is the very crux of the distinction between the two. People v. Montanez, 41 N.Y.2d 53, 56 (1976); see also People v. Roe, 74 N.Y.2d 20, 27 n.7 (1989) (awareness of the risk is "essential" to proving recklessness). Consequently, by charging the jury that defendant could be convicted of depraved indifference murder despite being "unaware of the risk," the court reduced the *mens rea* of the crime from recklessness to criminal negligence. The court thus relieved the prosecution of having to prove an element of the offense

charged - i.e., the culpable mental state of recklessness - and thereby impermissibly reduced the burden of proof and caused reversible error.  <u>See</u> <u>People v. Kennedy</u>, 242 A.D.2d 876 (1st Dept. 1997).  Moreover, the judge flatly refused to correct the erroneous charge after it was brought to his attention, thus violating his obligation to make the law meaningful to the jury and instruct the jurors correctly.  <u>See, e.g.</u>, <u>People v. Peterson</u>, 233 A.D.2d 533 (2d Dept. 1996).  Thus, had Mr. Hollenberg argued this point on appeal, he could and would have won reversal for his client.

Moreover, Mr. Hollenberg could have made an even stronger argument on appeal by including the "unaware of the risk" instruction in his juror confusion point.  In Point II of his brief, Mr. Hollenberg argued that Ms. Lewis' confusion about whether depraved indifference murder was equivalent to "accidental death" was exacerbated by the "51 percent" instruction on reasonable doubt. While the "51 percent" instruction was indeed an egregious error, it did not directly concern the elements of the charge.  The "unaware of the risk" instruction, in contrast, *did* concern the elements of the offense, and could easily have given juror Lewis exactly the misimpression to which she testified - i.e., that depraved indifference murder was equivalent to accidental death.[14]

Consequently, had Mr. Hollenberg discussed this instruction in conjunction with the juror confusion point, it would have established reversible error in two respects.  First, it would have

---

[14] As noted in paragraph 59 of the accompanying Declaration, the trial court determined that Ms. Lewis suffered from a case of "juror afterthought" rather than confusion.  To the extent that a presumption of correctness attaches to this finding, however, any such presumption is rebutted by the fact that the court was not aware of its incorrect "unaware of the risk" instruction at the time it delivered the ruling.  In other words, the trial court did not realize that its own instruction was the source of Ms. Lewis' confusion.  Moreover, the trial court's factual finding was additionally incorrect in that, as conceded by the *prosecution* witnesses at the post-trial hearing, the jurors deliberated on a charge that was not before them (first-degree murder) and thus incorrectly believed that second-degree murder was a lesser included offense applicable to unintentional killings.  This alone is clear and convincing evidence that, rather than suffering from "afterthought," the jurors were led by confusion to deliver an impermissible compromise verdict.

corroborated Ms. Lewis' testimony that she was indeed confused during deliberations rather than suffering from an "afterthought" or change of heart after delivering her verdict.  The trial court's decision denying defendant's CPL § 330.30 motion rested in part on its conclusion that Ms. Lewis had no basis for her misimpression about the elements of the crime.  In fact, however, the trial judge's own instructions gave Ms. Lewis this basis, and allowed her (and possibly other jurors) to deliberate under the mistaken belief that an accidental killing in which the defendant was "unaware of the risk" posed by his conduct could rise to the level of depraved indifference murder.

Moreover, had the "unaware of the risk" charge been properly raised, this Court would not have found that the prejudice caused by the pretrial "51 percent" instruction was "obviated" by the instructions given at the close of trial.  Indeed, this Court would have had to confront the fact that, far from "obviating" the jury's confusion and prejudice, the closing instruction compounded the prejudice and confused the jurors even further.  Under those circumstances, it is difficult to believe that this Court would not have found reversible error.  Hence, Mr. Hollenberg's inexplicable failure to raise or even mention the "unaware of the risk" instruction, either as an independent point or in conjunction with Point II of his brief, constitutes ineffective assistance of appellate counsel.

Finally, although the role of appellate counsel may include "winnowing out weaker arguments and focusing on a few key issues," it certainly does not include winnowing out the stronger arguments and focusing on the weaker ones.   In the instant case, Mr. Hollenberg filed a brief that was 48 pages long, well within the page and word limits set by the Appellate Division. Moreover, the ten point headings in his brief could easily have been consolidated into three, because eight of those ten points pertained to various specific instances of ineffective assistance of trial counsel.

Mr. Hollenberg could easily have made room for another argument that was as strong as, or stronger than, the ones he actually raised, and could indeed have done so within the context of a more streamlined and effective brief.  In fact, this argument could have been combined to devastating effect with Mr. Hollenberg's contention concerning the pretrial reasonable doubt charge.  There can be no possible strategic justification for his failure to argue this point, and this Court should consequently find that the state courts unreasonably applied <u>Jones</u> by denying petitioner's coram nobis motion.

## <u>CONCLUSION</u>

In light of the foregoing, this Court should grant the instant petition in its entirety and order that petitioner be immediately released or, in the alternative, that he be released unless the State of New York retries him by a date certain.

Dated: New York, NY
      February 25, 2008

                               _____/s/_____
                               JONATHAN I. EDELSTEIN (7827)

*Of Counsel:*

Robert Grossman

-26-